NO. 12-09-00258-CV

 

IN THE
COURT OF APPEALS          

 

TWELFTH
COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

STEPHEN HUTCHINS,                              
§                    APPEAL FROM THE 

APPELLANT            

 

V.                                                                    
§                     COUNTY COURT AT LAW #2

            

THE STATE OF TEXAS,

APELLEE                                           §                     SMITH
COUNTY, TEXAS  







 

MEMORANDUM OPINION

            Stephen
Wayne Hutchins appeals from a trial court order revoking a suspended commitment
order that was entered after the court found him in contempt for nonpayment of
child support.  In four issues, Hutchins argues that the trial court failed to
properly advise him of his right to counsel and that the evidence was
insufficient to support the trial court’s contempt finding.  We affirm in part
and dismiss in part.

 

Background

            Since
the filing of the divorce petition in this case in 1990, Linda Hutchins[1] has struggled to obtain child support payments from Stephen
Hutchins for their three children.  Before the divorce decree was signed, the
trial court held Stephen in contempt for not paying court ordered child
support, and Linda has brought numerous enforcement actions in the ensuing
years.  The State became involved in the case in 1991, at which time it alleged
that Stephen owed twenty–four hundred dollars in unpaid, court ordered
support.  

            In
September 2006, the trial court found that Stephen owed nearly $21,000 to his
children and found him in contempt of court.  The court ordered that he be
committed to the county jail, but suspended that commitment and placed him on
community supervision.  The court revoked that commitment in March 2007, but
again released Stephen to community supervision in April 2007.  On April 23,
2009, the State filed a motion to revoke Stephen’s suspended commitment,
asserting that he had violated the terms of his community supervision.  On July
7, 2009, the court held a hearing on the State’s motion.  At the hearing,
Stephen did not dispute that he had not been paying as ordered.  Instead, he
sought to rely on a settlement agreement he claimed Linda had signed.  The
trial court found that he had violated the terms of his community supervision
and revoked his previously suspended commitment.  This appeal followed.

 

Jurisdiction

            Stephen
argues in four issues that the trial court failed to inform him of his right to
counsel, the trial court failed to obtain a waiver of his right to counsel,
that the evidence was legally and factually insufficient to show that he
knowingly and voluntarily waived his right to counsel, and that the trial court
erred in finding him in contempt.  The State argues that this court lacks
jurisdiction to consider these arguments because Stephen’s exclusive remedy is
to file a writ of habeas corpus or writ of mandamus.

Applicable Law

            Generally,
a contempt order is reviewable only by a petition for writ of habeas corpus (if
the person in contempt is confined) or a petition for writ of mandamus (if no
confinement is involved).  See In re Henry, 154 S.W.3d
594, 596 (Tex. 2005); Cadle Co. v. Lobingier, 50 S.W.3d 662, 671
(Tex. App.–Fort Worth 2001, pet. denied) (citing In re Long, 984
S.W.2d 623, 625 (Tex. 1999) (orig. proceeding)).  Accordingly, this court lacks
jurisdiction to review contempt orders by direct appeal.  See Tex.
Animal Health Comm’n v. Nunley, 647 S.W.2d 951, 952 (Tex. 1983); Ex
parte Cardwell, 416 S.W.2d 382, 384 (Tex. 1967) (orig. proceeding); see
also Long, 984 S.W.2d at 625 (“Contempt orders that do not involve
confinement cannot be reviewed by writ of habeas corpus, and the only possible
relief is a writ of mandamus.”)

However, courts have considered other issues decided by a
trial court contemporaneously with the contempt proceeding so long as the issue
is not a collateral attack on the contempt judgment.  See Herzfeld v.
Herzfeld, 285 S.W.3d 122, 133 (Tex. App.–Dallas 2009, no pet.)
(discovery sanction); In the Interest of B.C.C., 187 S.W.3d 721,
723–24 (Tex. App.–Tyler 2006, no pet.) (violation of terms of community
supervision); In the Interest of T.L.K., 90 S.W.3d 833, 841 (Tex.
App.–San Antonio 2002, no pet.) (attorney’s fees); In the Interest of
M.E.G., 48 S.W.3d 204, 208–09 (Tex. App.–Corpus Christi 2000, no pet.)
(distribution of judgment, notice, and standing).

Here, this court lacks jurisdiction to review the contempt finding
on direct appeal.  We do have jurisdiction to consider other issues arising
from the 2009 hearing. Cf. Nunley, 647 S.W.2d at 952–53
(Tex. 1983) (considering issues other than contempt order); Krone v.
Krone, No. 08-03-00144-CV, 2004 Tex. App. LEXIS 5139, at *4 (Tex.
App.–El Paso June 10, 2004, pet. denied) (mem. op.) (dismissing for lack of
jurisdiction where appellant sought to appeal only the contempt order).  

 

Waiver of Right to Counsel

            In
his first, third, and fourth issues, Stephen argues that the trial court failed
to comply with Texas law regarding the appointment of counsel.

Applicable
Law

Texas law requires that a trial court, when hearing an
enforcement action to revoke community supervision, must determine whether
incarceration of the respondent is a possible result of the proceedings.  See
Tex. Fam. Code Ann. §
157.163(a) (Vernon 2008).  If incarceration is a possibility, the court must
inform a respondent who does not have counsel of the right to be represented by
an attorney and must inform an indigent respondent that he has the right to
court appointed counsel.  See id. § 156.163(b).  A trial court is
“without authority” to assess a jail term to an unrepresented, indigent person
unless it has complied with the statutory requirements for waiver of counsel.  See
Ex parte Gunther, 758 S.W.2d 226, 226–27 (Tex. 1988) (orig.
proceeding).

Courts use the rules of criminal procedure to evaluate
problems presented in child support collection cases because those proceedings
are quasi–criminal.  See, e.g., In the Interest of B.C.C.,
187 S.W.3d at 723 n.2 (citing Ex parte Sanchez, 703 S.W.2d 955,
957 (Tex. 1986)); see also Ex parte Scott, 133 Tex. 1, 10,
123 S.W.2d 306, 311 (1939) (“Further, we acknowledge that proceedings in
contempt cases should conform as nearly as practicable to those in criminal
cases.”).  A defendant in a criminal case may waive the right to counsel, but
to be effective, a waiver of counsel must be made competently, knowingly,
intelligently, and voluntarily.  See Collier v. State, 959 S.W.2d
621, 625-26 (Tex. Crim. App. 1997) (citing Godinez v. Moran, 509
U.S. 389, 400–01, 113 S. Ct. 2680, 2687, 125 L. Ed. 2d 321 (1993)).  This means
the defendant must have a full understanding of the right to counsel and a
meaningful awareness of the dangers and disadvantages of self–representation.  Collier,
959 S.W.2d at 626.  

Facts

The trial court never directly advised Stephen that he had a
right to appointed counsel or of the ramifications of proceeding without
counsel.  Stephen had previously hired counsel and said that he had attempted
to hire the same attorney for the hearing in this case.  The trial court judge
knew that the attorney had been suffering from an illness.  The court recessed
the proceedings and reconvened them after it determined that counsel would not appear
to represent Stephen. 

The trial court told Stephen that he had “the same rights to
have a court–appointed attorney as these gentlemen.”  The reference was
apparently to other men in the courtroom.  The court presented Stephen with a
document.  That document was a request to speak with the “Smith County District
Attorney or their [sic] representative” and includes an acknowledgement that the
signor understood that he could ask the trial court to appoint counsel if he was
indigent.[2]  Stephen signed the document.  He discussed his case with the
deputy attorney general present in court, but the parties could not reach an
agreement.  The trial court asked the deputy attorney general if she would seek
to have Stephen jailed, and she indicated that she would.  The trial court
reiterated that it had explained Stephen’s rights to him and that Stephen was
without counsel.  The court also noted that Stephen had signed the written admonishment
and asked if he had any requests to make of the court.  Stephen indicated that
he did not, and the trial court proceeded with the hearing.

Analysis

The trial court recited in its order that it found Stephen
had been advised of his right to court appointed counsel, that he knowingly and
intelligently waived his rights, and that he elected to proceed without an
attorney.  This conclusion might be difficult to reconcile with the way in
which Stephen was apprised of his rights.  However, to assess whether a waiver
is effective, we must review the totality of the circumstances.  See Williams
v. State, 252 S.W.3d 353, 356 (Tex. Crim. App. 2008).  

There are two important pieces of information present in this
case that are not present in many other cases.  First, Stephen previously had
counsel.  He told the court that he had sought to have retained counsel appear
in this case.  When counsel did not appear, Stephen elected to proceed without
him.  Second, and more importantly, the history of the case provides additional
context for the trial court’s remarks.  Stephen had signed a much more
extensive waiver of rights in 2004, which included many more particulars about
the process and in which Stephen stated that he understood he could have
appointed counsel and that he could request a continuance to retain an attorney.
 Furthermore, in 2006, the trial court appointed counsel for Stephen.  

Stephen argues that the trial court did not first determine
whether he was indigent, and did not specifically obtain a waiver of counsel. 
He argues further that the vague question as to whether he had a “request” was
insufficient to constitute a waiver of the right to counsel.  We agree that,
standing alone, each component of the trial court’s procedure was lacking.  The
written document signed by Stephen is not adequate to indicate an understanding
of the rights involved.  The meaning of the trial court’s statement that Stephen
had the same right to counsel as the other men in the courtroom depends
entirely on who those men were and what Stephen understood about their right to
counsel.  And the final question, whether Stephen had a request, taken alone, is
similarly vague.  

However, when viewed in the context of this case, the facts
support the trial court’s conclusion that Stephen made a competent, knowing,
intelligent, and voluntary decision to proceed without counsel.  At the time he
elected to proceed without counsel, he knew a great deal about the process at
hand, having been involved in it for nearly two decades.  He knew counsel could
be appointed because counsel had previously been appointed in this case.  And
he knew he could have retained counsel, because he had previously retained
counsel for this case.  Stephen had also proceeded in the past without
appointed or retained counsel.  The trial court could have concluded that Stephen
understood his right to counsel and the consequences of waiving his right based
on the admonishments given along with the experience Stephen had with counsel,
both appointed and retained, throughout the course of this litigation.  Therefore,
we overrule Stephen’s first, third, and fourth issues.

Accord and Satisfaction

In his second issue, Stephen argues that there was an
agreement between him and the mother of his children that was an accord and
satisfaction of his child support arrearage and his ongoing obligation to pay
child support.  Therefore, he concludes, the trial court had “no basis for
finding [him] in contempt for failure to pay child support.”  This assertion is
based on an agreement filed in the clerk’s record of this case in February 2007
in which Linda and Stephen agreed that she would accept ten dollars in exchange
for “any past due arrears and future child support.”[3]

Stephen’s argument is an attack on the trial court’s 2006
contempt finding.  The trial court did not find Stephen in contempt following
the hearing in 2009 that resulted in the order appealed in this case.  It
merely found that he violated the terms of his community supervision.[4]  As we established earlier in this opinion, the proper vehicle
to attack a contempt judgment is either by writ of habeas corpus or by
mandamus.  See Nunley,
647 S.W.2d at 952; see also Ex parte Eureste,
725 S.W.2d 214, 216 (Tex. Crim. App. 1986) (“There is no remedy or right of
appeal from an order of contempt.”).  Accordingly, this court lacks jurisdiction to consider Stephen’s
argument that he should not have been found in contempt. 

 

Conclusion

            We
hold that the trial court did not violate Stephen’s right to counsel. 
Therefore, we overrule Stephen’s first, third, and fourth
issues.  We lack jurisdiction on direct appeal to consider whether the evidence
supports the trial court’s contempt finding, and so we dismiss Stephen’s
second issue.  We affirm the judgment of the trial court.

 

 

                                                                                                Sam Griffith

                                                                                                     
Justice

                                                                                                                                                                                    

 

Opinion delivered August 18, 2010.

Panel consisted of Worthen, C.J.,
Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)


 
 
 
 
 
 
 
  
 
 
 
 
 
  
 












[1] It appears
that Linda’s surname became “Moulton” at some point during this litigation. 
For ease of reference, we will refer to the parties by their first names and to
the Office of the Attorney General as the State.

 





[2] The written
admonishment that the trial court described is different from the one Stephen
signed.  The trial court told him that the form instructed him that he did not
have to talk to the State, that he could stop talking to the State, and that he
did not have to reach an agreement.  The form Stephen signed does not contain
those admonishments.





            [3]
At the hearing, Stephen seems
to refer to a new agreement signed by the parties, but he did not offer any new
agreement.





                [4]
It appears that the trial court integrated the 2007 agreement into its order
when it redetermined Stephen’s child support obligation following a hearing in
2007.  This is not an appeal from that hearing.  Stephen does not argue that he
met the terms of his community supervision.  He also does not appeal the trial
court’s current finding that he owes child support.  Whether Linda’s disclaimer
of past and future child support is effective depends on the scope of her
settlement authority and the trial court’s consent.  See Tex. Fam. Code Ann. § 154.124 (Vernon
2008).  Stephen offers no evidence that Linda had the authority to waive his
court ordered child support obligations.  From Stephen’s comments to the trial
court, it appears that Linda disclaimed her right to past or future child
support, but that the State did not agree to relinquish whatever claim it had
to the unpaid monies.  

            The State does not concede that Linda
had any settlement authority.  Instead, it argues that Linda assigned her
rights to the State in 1991.  In its brief, the State cites a pleading it filed
in 1991 as proof of this assertion.  The cited passage does not show that Linda
assigned her rights to the State, not every child support case handled by the
State involves an assignment, see In the Interest of J.P., 296
S.W.3d 830, 836–37 (Tex. App.–Fort Worth 2009, no pet.), and a pleading is not
proof of the facts asserted therein.

                Accord
and satisfaction is an affirmative defense.  See, e.g., Williams
v. Colthurst, 253 S.W.3d 353, 359 (Tex. App.–Eastland 2008, no pet.). 
If we construe Stephen’s two paragraph argument to be that the trial court
erred in finding that he violated the terms of his community supervision
because he had met his obligations, his failure to prove accord and
satisfaction, which is an affirmative defense, would mean that we would not
disturb the trial court’s finding on this basis.