

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00112-CV

IN THE INTEREST OF J.D., A MINOR CHILD

On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 97-CS-085

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

John Henry Dupree's failure to obey a court order requiring him to make child support payments and to provide medical support for J.D. resulted in Dupree being placed on community supervision. Because Dupree thereafter continued missing these payments, the trial court revoked his community supervision and ordered him committed to the Cass County jail for 180 days.[1] On appeal, Dupree attacks the revocation by claiming insufficient evidence, an improper delay in signing the order, an excessively long term of confinement, and a vague order.

We dismiss for want of jurisdiction Dupree's claims that his underlying contempt order is void for vagueness and that his 180-day sentence is excessive, and we affirm the remainder of the trial court's judgment. That case disposition is based on our rulings that (1) we have no jurisdiction to review a contempt order on direct appeal, (2) revocation of Dupree's community supervision was not an abuse of discretion, and (3) the trial court's order of revocation was not void due to delay in signing the order.

On May 27, 1997, Dupree was ordered to pay monthly child support for his daughter, J.D., in the amount of $110.00. On March 20, 2009, the trial court found Dupree in arrears in the amount of $21,536.75, held that Dupree failed to pay court-ordered child support on four separate dates, and found him to be in contempt of the order requiring him to pay child support. The trial court ordered Dupree committed to the Cass County jail for 180 days for each of the four separate acts of contempt, but suspended Dupree's commitment and placed him on community supervision for 120 months or until he paid the entire cumulative child support

---

[1]*See* TEX. FAM. CODE ANN. § 157.166 (authorizing enforcement of incarceration for contempt and failure to pay child support) (West 2014).

arrearage, whichever came first. To address Dupree's arrearage, the trial court entered judgment of $21,536.75, with interest, in favor of the Attorney General, and ordered Dupree to make an initial $500.00 payment and monthly payments of $388.66 thereafter. The trial court further modified Dupree's current child support obligations to J.D.'s mother, Patrice Phelps, by ordering Dupree to pay Phelps $238.66 in child support per month and $25.00 in medical support per month, beginning on April 1, 2009.

On June 15, 2012, based on the Attorney General's motion to revoke Dupree's community supervision, the trial court decided to continue Dupree on community supervision. It found, however, that Dupree's total arrearage had reached $32,968.06, entered judgment with interest on that amount in favor of the Attorney General, ordered Dupree to make monthly payments of $190.00 until the arrearage judgment was satisfied, and ordered Dupree to continue making current child support and medical support payments as set forth in the March 20, 2009, order.

On April 19, 2013, the Attorney General again filed a verified motion to revoke Dupree's community supervision.[2] At the hearing on this motion, Dupree acknowledged that, as of September 30, 2013, he was behind in the total amounts of $33,430.63 for child support and $1,333.11 for medical support. Dupree also stated that he had failed to make a voluntary child support payment after August 2012 because he had other household expenses.

On October 17, 2013, an associate judge found that Dupree violated the terms and conditions of his community supervision by failing to make child support and medical support

---

[2]On or about May 6, 2013, Dupree paid $3,500.00 toward the child support arrearage.

3

payments in September, October, November, and December 2012 as required by the March 20, 2009, order. Therefore, the associate judge revoked Dupree's community supervision and ordered him committed to the Cass County jail for 180 days, giving Dupree credit for five days which he had already served. The associate judge's proposed order was adopted by the trial court October 25, 2013.

*(1)    We Have No Jurisdiction to Review a Contempt Order on Direct Appeal*

Dupree argues that the trial court's underlying June 15, 2012, order continuing him on community supervision was vague and could not support any contempt proceeding.[3] Dupree also argues that the trial court's 180-day jail sentence, assessed by an even earlier order of March 20, 2009, was excessive.

Contempt judgments are not final judgments. *In re Office of Atty. Gen. of Tex.*, 215 S.W.3d 913, 915–16 (Tex. App.—Fort Worth 2007, no pet.) ("A contempt judgment may be attacked by a petition for writ of habeas corpus (if the contemnor is confined) or a petition for writ of mandamus (if no confinement is involved. . . .")). Thus, "[t]here is no remedy or right of appeal from an order of contempt." *Ex parte Eureste*, 725 S.W.2d 214, 216 (Tex. Crim. App. 1986); *see Tex. Animal Health Comm'n v. R.J. Nunley*, 647 S.W.2d 951, 952 (Tex. 1983); *Martin v. Paris*, No. 06-10-00037-CV, 2011 WL 766653, at *5 (Tex. App.—Texarkana Mar. 4, 2011, no pet.) (mem. op.) (contempt orders reviewable only through habeas corpus or mandamus proceedings); *In re B.C.C.*, 187 S.W.3d 721, 723 (Tex. App.—Tyler 2006, no pet.)

---

[3]This order simply required Dupree to continue making current child support and medical support payments as set forth in the March 20, 2009, order. The trial court's revocation of Dupree's community supervision was based on his failure to adhere to the March 20, 2009, order, not the June 15, 2012, order about which Dupree complains. There is no argument that the March 20, 2009, order was vague.

Dupree's challenges to the vagueness of the June 15, 2012, order and the trial court's March 20, 2009, decision to impose a 180-day jail sentence are challenges to the propriety of the underlying contempt proceedings. Because we have no jurisdiction to address these issues on direct appeal, we dismiss those issues for want of jurisdiction.[4] *B.C.C.*, 187 S.W.3d at 723.

*(2)    Revocation of Dupree's Community Supervision Was Not an Abuse of Discretion*

Following a hearing on a motion to revoke community supervision, the court may continue, modify, or revoke the community supervision. *See* TEX. FAM. CODE ANN. §§ 157.214, 157.216 (West 2014). The only question presented in an appeal from an order revoking community supervision for failure to pay child support is whether the trial court abused its discretion in revoking the defendant's community supervision. *B.C.C.*, 187 S.W.3d at 724 (citing *Lloyd v. State*, 574 S.W.2d 159, 160 (Tex. Crim. App. [Panel Op.] 1978)); *see Rickles v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Stafford v. State*, 63 S.W.3d 502, 511 (Tex. App.—Texarkana 2001, pet. ref'd). The standard of proof in revocation proceedings is a preponderance of the evidence.[5] *B.C.C.*, 187 S.W.3d at 724 (citing *Lloyd*, 574 S.W.2d at 160).

To satisfy its burden of proof, the State must, by the greater weight of the credible evidence, create in the trial court a reasonable belief that a condition of community supervision

---

[4]To present a complaint for appellate review, the complaint must be made to the trial court. TEX. R. APP. P. 33.1(a)(1). Even if we had jurisdiction over Dupree's argument, we would overrule Dupree's point of error on excessive punishment because there is nothing in the record or in Dupree's brief suggesting that the argument was presented to the trial court. *See Smith v. State*, 10 S.W.3d 48, 49 (Tex. App.—Texarkana 1999, no pet.). Dupree's motion for sentence reduction stated that he was "ready, willing, and able to support [J.D.]," but did not complain that the jail sentence was excessive.

[5]A contempt proceeding based on failure to make child support payments is quasi-criminal in nature. *B.C.C.*, 187 S.W.3d at 723 n.2 (citing *Ex parte Cardwell*, 416 S.W.2d 382, 384 (Tex. 1967); *Ex parte Davis*, 344 S.W.2d 153, 156 (Tex. 1961)). Proceedings in civil contempt cases "should conform as nearly as practicable to those in criminal cases," and review of such cases is "guided by elements of criminal jurisprudence." *Id.*

5

has been violated as alleged in the motion to revoke. *B.C.C.*, 187 S.W.3d at 724. Proof of one alleged violation supports an order revoking community supervision. *Id.*; *see Smith v. State*, 286 S.W.3d 333, 343 (Tex. Crim. App. 2009). The trial court judges the credibility of the witnesses and decides if the allegations are sufficiently established. *B.C.C.*, 187 S.W.3d at 724. We view the evidence in the light most favorable to the trial court's order. *Id.*

Dupree agreed on the amount of his arrearages and testified that he failed to make child support and medical support payments as ordered due to other household expenses. Dupree did not argue below, and does not argue on appeal, that he was unable to afford these payments.[6] Since the record reflects that Dupree admittedly did not make child support and medical support payments as ordered, the trial court did not abuse its discretion in revoking his community supervision. *See id.*

*(3)     The Trial Court's Order of Revocation Was Not Void Due to Delay in Signing the Order*

Dupree was taken into custody October 17, 2013, immediately after the associate judge announced the jail sentence. Yet, the trial court did not adopt the proposed order revoking Dupree's community supervision until October 25, 2013. Dupree argues that the commitment order is void because the signing of the order was unduly delayed. *Ex parte Calvillo Amaya*, 748 S.W.2d 224 (Tex. 1998). Because a void judgment is a nullity, we will address the merit of Dupree's complaint. *See PNC Stores, Inc. v. Rivera*, 379 S.W.3d 267, 270–71 (Tex. 2012); *Nix*

---

[6]In fact, Dupree later informed the trial court that he "is a self employed logger (Dupree Logging) . . . [and] has a regular source of income through his self employment." Moreover, an obligor's argument that he lacked the ability to provide support in the amount ordered, and lacked property that could be sold, mortgaged, or otherwise pledged to raise the funds needed is an affirmative defensive to an allegation of contempt which must be pled and proven. TEX. FAM. CODE ANN. § 157.008(c) (West 2014).

6

*v. State*, 65 S.W.3d 664, 667–68 (Tex. Crim. App. 2001); *Ramsey v. Ramsey*, 19 S.W.3d 548, 552 (Tex. App.—Austin 2000, no pet.).

"[A] person may not be imprisoned for contempt without a written order of commitment." C*alvillo Amaya*, 748 S.W.2d at 224. "A commitment is a warrant, order or process by which a court or magistrate directs a ministerial officer to take a person to jail or to prison and to detain him there." *Id.* Here, on October 17, 2013, the associate judge signed the judgment revoking Dupree's community supervision. The written order also included a commitment order mandating the Cass County Sheriff to arrest Dupree and commit him to the county jail. Because a written order of commitment was signed on the same day Dupree was ordered to confinement, the signing of the commitment order was not unduly delayed, and the order of commitment is not void.[7]

---

[7]Moreover, a proposed order providing for enforcement by contempt or immediate incarceration becomes an order of the trial court (1) if the referring court signs the associate judge's proposed order or judgment and (2) the order meets the requirements for a contempt order listed in Section 157.166 of the Texas Family Code. TEX. FAM. CODE ANN. § 157.166. Because the trial court signed the associate judge's order, the associate judge's October 17, 2013, order became the order of the trial court if the requirements of Section 157.166 were met.[7] *Id.*

Section 157.166 provides,

(a)　　An enforcement order must include:

　　(1)　　in ordinary and concise language the provisions of the order for which enforcement was requested;

　　(2)　　the acts or omissions that are the subject of the order;

　　(3)　　the manner of the respondent's noncompliance; and

　　(4)　　the relief granted by the court.

(b)　　If the order imposes incarceration or a fine for criminal contempt, an enforcement order must contain findings identifying, setting out, or incorporating by reference the provisions of the order for which enforcement was requested and the date of each occasion when the respondent's failure to comply with the order was found to constitute criminal contempt.

We dismiss for want of jurisdiction the portions of Dupree's appeal attacking the underlying order for vagueness and the length of sentence. Having overruled the remainder of Dupree's issues, we affirm the trial court's order revoking his community supervision.


Josh R. Morriss, III
Chief Justice

Date Submitted:      June 27, 2014
Date Decided:        July 16, 2014

---

       (c)     If the enforcement order imposes incarceration for civil contempt, the order must state the specific conditions on which the respondent may be released from confinement.

TEX. FAM. CODE ANN. § 157.166.

Dupree argues only that the order failed to meet Section 157.166's requirement that the order indicate how Dupree could purge himself. However, the commitment order plainly provided, "DUPREE may purge himself of this revocation by paying $34,763.74 to the Cass County Sheriff's Department to be distributed toward child support arrears and medical support arrears, at which time the Court will consider reinstating [Dupree's] community supervision." Because the trial court signed the proposed order and all of Section 157.166's requirements were met, the associate judge's October 17, 2013, order became the order of the trial court.

8